IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS
(East St. Louis Division)

| | |
|---|---|
| COLIN J. BENSMAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 17-cv-1090-SCW |
| ) | |
| PHACIL, INC., ) | |
| ) | |
| Defendant. ) | |
| _____) | |

**DEFENDANT'S REPLY TO PLAINTIFF'S
OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

In accordance with the Court's Order of October 25, 2018, Defendant, Phacil, Inc. ("Phacil"), through counsel, submits its Reply brief, stating as follows:

**I.     INTRODUCTION**

As the Court is aware, Plaintiff's opposition papers filed in response to Phacil's Motion for Summary Judgment attempt to advance a number of new facts and legal theories never before pled or testified to in this matter. Chief among these new claims is the theory that because Phacil submitted a proposal to the Federal Government that estimated a higher number of full-time employees on the contract than was actually staffed, Plaintiff was somehow justified in believing that Phacil "may have been" defrauding the Federal Government.

As with the other various theories and claims alleged by Plaintiff to date, this latest set of allegations also fails to set forth a viable claim for wrongful termination because (1) courts have soundly and consistently rejected the notion that a government contractor can be liable for fraud by allegedly over-estimating the amount of manpower that might be required to satisfy the statement of work in a firm-fixed-price contract, and (2) even if such a theory could be

entertained under the law, it cannot be offered in this case because Plaintiff has already admitted that he had absolutely no knowledge of the facts or circumstances of either Phacil's proposal to the Federal Government or the terms within the resulting contract. Because of these fatal flaws in Plaintiff's case, the Court should grant summary judgment in favor of Phacil.

## II.     ARGUMENT

In his Memorandum in Opposition to Defendant's Motion for Summary Judgment ("Opposition", Doc. No. 43), Plaintiff makes the bald allegation that because Phacil submitted a proposal to the Federal Government estimating that nine full-time equivalents ("FTEs") may be needed to fulfill the statement of work under the contract, and because Phacil actually staffed the contract with only between 5.5 to 7.5 FTEs, that Phacil may have defrauded the Federal Government by having it pay for labor that was worked into the firm-fixed-price contract, but never provided. (Opposition at 5-6).

Setting aside the fact that Plaintiff has conceded that he never even knew a proposal existed and, moreover, that he never saw or even asked about the terms of Phacil's contract with the Federal Government, it is well-established law that a firm-fixed-price contract does not require the contractor to staff the contract based upon the staffing proposal. *See Omni Corp v. United States,* 41 Fed. Cl. 585 (1998). In *Omni Corp.*, the Court of Federal Claims explained that even if a specific staffing requirement had been incorporated into the contract via the proposal, the firm-fixed-price nature of the contract meant that deficient performance would have to be alleged <u>before</u> the contract could be considered in breach. According to the Court,

> Given the nature of the contract, [the contractor] assuredly would have been responsible for those costs exceeding its expectations or calculations. A firm-fixed-price contract places this burden upon a contractor. The fact that [the contractor] discovered it could meet its contractual responsibility to provide the services required without always [meeting the staffing proposal] does not reveal an attempt to gain undue profit. Had [the contractor] learned during the course of

> performance that each [requirement in controversy] required [additional labor beyond the proposal], [the contractor], as a party to a firm-fixed-price contract, would have been entitled to no price increase as a result. That [the contractor's] costs were less than anticipated while managing to deliver the services for which the government contracted is not a justifiable reason for the withholdings that occurred in this case.

*Id.* at 595.

In addition, courts in multiple jurisdictions have repeatedly held that "[A]fter the contract is awarded and the fixed price established, the contractor is entitled to keep any cost savings generated by the contractor." *United States ex rel. Sanders v. Allison Engine Co.*, 364 F. Supp. 2d 699, 708 (S.D. Ohio 2003) (citing *Omni Corp. v. United States,* 41 Fed. Cl. at 595 (1998)); *see also S&B/Bibb Hines Pb 3 Joint Venture v. Progress Energy Fla., Inc.*, 365 F. App'x 202, 203 (11th Cir. 2010) ("[i]n a fixed price contract, 'if the final total costs of the agreed upon services exceed the contracted price, the contractor takes the loss; *conversely, he can profit if the costs are lower than the contract price*.'") (emphasis added) (citing *United States v. White*, 765 F.2d 1469, 1472 (11th Cir. 1985)). This includes situations in which the government uses cost-principles, such as manpower estimates, to provide a frame of reference for negotiating overall cost. In *Info. Sys. & Networks Corp. v. United States*, the court held,

> Unlike cost-reimbursement contracts, the focus of a fixed-price negotiation is on total price, rather than individual costs. *While a fixed-price negotiation may rely on cost principles to establish a frame of reference for negotiating the overall price*, the goal of the negotiation is not to remunerate the contractor for each individual allowable cost. Instead, the goal is to reach a "fair and reasonable" price based upon the universe of costs. It is this focus on "total price" that allocates the risk in a fixed-price undertaking.

*Id.*, 64 Fed. Cl. 599, 604-07 (2005) (emphasis added).

This means that Phacil can perform under the contract at labor levels and costs less than what it estimated without breaching the contract, let alone defrauding the Federal Government. Plaintiff's attempt to use cost principals found in the proposal (albeit after the fact and not

3

contemporaneously known to him) are, therefore, woefully insufficient to set forth a viable cause of action for wrongful termination. "[T]he mere fact that an activity may be accomplished less expensively in a fixed-price contract falls measurably short of fraud . . . ." *United States ex rel. Wilkins v. N. Am. Constr. Corp.*, 173 F. Supp. 2d 601, 635 (S.D. Tex. 2001) (citing *Sterling Millwrights, Inc. v. United States*, 26 Cl. Ct. 49, 101 (1992).

### III. CONCLUSION

For the foregoing reasons, Phacil, Inc., respectfully requests that this Court grant its Motion for Summary Judgment and dismiss Plaintiff's case with prejudice.

>PHACIL, INC.
>By Counsel,
>BEAN, KINNEY & KORMAN, P.C.
>
>*/s/ Richard D. Kelley*
>Richard D. Kelley, Esq. (*Pro Hac Vice*)
>Samuel J. Banks, Esq. (*Pro Hac Vice*)
>Bean, Kinney & Korman, P.C.
>2300 Wilson Boulevard, Seventh Floor
>Arlington, Virginia 22201
>(703) 525-4000 telephone
>(703) 525-2207 facsimile
>rkelley@beankinney.com
>sbanks@beankinney.com
>
>Timothy C. Sansone
>600 Washington Avenue, 15th Floor
>St. Louis, Missouri 63101-1313
>(314) 446-4250 telephone
>(314) 241-7604 facsimile
>tsansone@sandbergphoenix.com
>
>*Counsel for Defendant Phacil, Inc.*

## CERTIFICATE OF SERVICE

  I certify that on November 1, 2018, I filed this document with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing to the following:

   David M. Heimos, Esquire
   230 South Bemiston, Suite 1200
   Clayton, Missouri 63105
   (314) 862-3333 Ext. 17
   (314) 862-0605 (Fax)
   davidmheimos@heimoslaw.com
   *Counsel for Plaintiff*

                */s/ Richard D. Kelley*
                Richard D. Kelley